# STATE OF VERMONT

# ENVIRONMENTAL COURT

|                                      |   |                            |
|--------------------------------------|---|----------------------------|
| **Sheldrick Building Permit**        | } | **Docket No. 185-9-07 Vtec** |
| **(Appeal of Bennett and Naritomi)** | } |                            |

## Decision on Pending Motions for Summary Judgment

Appellants Stuart Bennett and Patti Naritomi ("Appellants") appealed from a decision of the Town of Charlotte Zoning Board of Adjustment ("ZBA") upholding a building permit issued to Appellee-Applicants Donald and Heidi Sheldrick for the construction of a truck-repair workshop. Appellants are represented by Vincent A. Paradis, Esq.; Appellee-Applicants are represented by Liam L. Murphy, Esq.; the Town of Charlotte is represented by John H. Klesch, Esq.; and Annemarie Curlin, appearing in this proceeding as an interested person, is representing herself.

Now pending before the Court is Appellants' motion for summary judgment on Question one from their Statement of Questions. Appellee-Applicants filed a cross-motion for summary judgment on Question one and also moved for summary judgment on Questions two and three from Appellants' Statement of Questions. Each party offered objections to the other party's competing motions. Both motions are now ripe for the Court's consideration.

## Factual Background[1]

*A.)    Site Description and Procedural History*

1.    Donald and Heidi Sheldrick ("Applicants") own a four-acre parcel of land at 1091 Roscoe Road in the Town of Charlotte ("Town"). The property is located in the Rural Zoning District under the Town of Charlotte Land Use Regulations ("Regulations").[2] Presently situated on Applicants' property is a single family dwelling, a detached garage, a horse barn, a run-in shed for horses and other animals, and a "temporary" garage.

---

[1]   All facts recited or referenced here are undisputed unless otherwise noted. For purposes of the motion for summary judgment only, we view the material facts in a light most favorable to the non-moving parties. V.R.C.P. 56(c). We are not yet at the stage of making specific factual findings. Thus, our recitation here should not be regarded as factual findings  See Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14, 24 (citing Fritzen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000)(mem.)).

[2]   The Town filed with the Court a copy of the Town Regulations, adopted March 7, 2006.

2.     The existing dwelling on the property, constructed in 1999, is 28' x 32' and includes a 12' x 8' enclosed mudroom, a 6' x 8' front porch, and a 12' x 16' rear deck.  Thus, the footprint of the existing dwelling comprises approximately 1,232 square feet.  With three floors of living space, the cumulative floor space of the dwelling comprises approximately 2,832 square feet.

3.     The dimensions of the outbuildings on the property are as follows:  the detached garage is 24' x 40' with a footprint of 960 square feet; the horse barn is 12' x 60' with a footprint of 720 square feet; the run-in shed for animals is 10' x 12' with a footprint of 120 square feet; and the "temporary" garage is 14' x 32' with a footprint of 488 square feet.  Therefore, the total building coverage on the property, including the dwelling and the existing outbuildings is 3,520 square feet, which represents approximately 2% building coverage for the four-acre parcel.

4.     With the exception of the temporary garage, all of the existing buildings on Applicants' property are used as or in connection with their primary residence and to house their personal hobbies, including the raising of horses and other animals.  None of these existing buildings (again, with the exception of the temporary garage) are used for commercial or business-related purposes.

5.     All structures on the property comply with the applicable height and set back requirements as set forth in Regulations §§ 3.5 and 3.6.

6.     In January of 2007, Applicants received a letter of determination from the Town of Charlotte Zoning Administrator giving notice that the Zoning Administrator's drive-by inspection of Applicants' property revealed nine vehicles stored on the property, the majority of which were commercial trucks.  The letter of determination informed Applicants that approval from the Planning Commission and ZBA was required for such use—which the Zoning Administrator determined to be a "contractor's yard"[3] as defined in the Regulations.

7.     After receipt of the Administrator's letter of determination, Applicants advised that they were conducting a "home occupation" on their property, a use which they believed did not require a zoning permit.  The Zoning Administrator replied that to fit within the definition of the Regulations for a home occupation (Regulations § 4.11(A)(1), defining the standards for a use identified as "Home Occupation I"), all vehicles need to be inside a structure.  Applicants did not pursue approval of a "contractor's yard" use for their property.

---

[3] A "contractor's yard" is defined in Regulations § 10.2 as "a parcel of land with or without buildings to be used for the storage of equipment, materials and/or vehicles used in the operation of construction, landscaping and similar uses."

2

8.     Thereafter, in March of 2007, Applicants submitted a zoning permit application to the Town for the construction of a 35' x 50' garage/workshop ("Proposed Workshop") in which Mr. Sheldrick would repair and work on commercial trucks and related equipment. The Proposed Workshop would have 16' sidewalls, a 24' 8" peak, sit on a concrete slab and is designed to resemble the existing horse barn. The footprint for the Proposed Workshop will be 1,750 square feet.

9.     On March 28, 2007, the Zoning Administrator issued Permit #07-14-TM for the Proposed Workshop as an accessory building. The Applicants filed a copy of Permit #07-14-TM as Exhibit A in support of their pending motion.

10.     Appellants reside at 1154 Roscoe Road, which is across the road and easterly from Applicants' property. On April 10, 2007, they appealed the Zoning Administrator's approval of the Proposed Workshop to the ZBA.

11.     By written decision dated August 9, 2007, the ZBA affirmed the decision of the Zoning Administrator, thus denying their appeal. Appellants thereafter filed a timely appeal from the ZBA determination with this Court.

*B.)     Home Occupation considerations*

12.     Applicants intend to conduct a truck repair business on the property within the Proposed Workshop. Since at least 2004, Mr. Sheldrick has repaired truck drive-shafts and machinery in the existing garage, outside the garage, and later on, in the temporary garage. During this period, Applicants purportedly contacted the Town to inquire whether any permits were required for their business. The Town sent pertinent sections of the Regulations that relate to a home occupation and informed Applicants that if they complied with these sections, a permit was not required.[4]

13.     Applicants assert compliance with the sections pertaining to Home Occupation I,[5] since they are the only employees; the number of business-related vehicle trips has never exceeded twelve per day; and their occupational activities will occur wholly within an accessory

---

[4]   Regulations § 4.11(A)(1) defines Home Occupation I as "includ[ing] home occupations that employ only the resident(s) of a dwelling; that occurs within a minor portion of the dwelling and/or within an accessory structure to the dwelling; and generates no more than 12 business-related vehicle trips per day. This type of home occupation does not require a zoning permit."

[5] Applicants also constructed a temporary garage—see paragraph 15 of this Decision—in order to conduct their repair business during the pendency of this appeal.

3

building—i.e. the Proposed Workshop. Appellants have not put forth evidence to contradict Applicants' first two assertions here, but do dispute the third.

14. Mr. Sheldrick represents that he will repair trucks identified as Class 5 to Class 7 trucks, and on occasion, will repair a truck from the Class 8 category. Applicants provided a copy of a truck classification chart as Exhibit D. Mr. Sheldrick further represents that he will conduct all repair work wholly within the Proposed Workshop.

15. In October of 2007, Applicants received permission from the Town to construct a "temporary" garage,[6] as described in ¶ 3 above, in order to conduct their home occupation truck repair business. The letter "confirm[ed] that the repair of trucks by Mr. Donald Sheldrick at 1091 Roscoe Road, Charlotte . . . complies with the requirements of Home Occupation, Level 1, under Section 4.11(A) of the Charlotte Land Use Regulations and does not need any building or zoning permit" provided that there were no additional employees, the repair work was done within an accessory structure, there were not more than 12 vehicle trips per day, and that all performance standards were met. The Town's decision was posted in a public location for the statutory period and was not appealed. Appellants challenge the legal significance of this land use determination, complaining that they received no actual notice of Appellants' request for the Town determination, and only learned of the determination after the appeal period had expired.

16. The Proposed Workshop is not intended for human occupancy and will not contain a bathroom or other facilities requiring a municipal or state waste disposal permit, pursuant to Regulations § 3.16.

17. Home Occupation I is not a use for which minimum off-street parking is required under Regulations § 3.11 or Table 3.1.

18. No sign is planned for Applicants' property or their proposed Home Occupation I use. Regulations § 3.13

19. In their efforts to show that their Proposed workshop and home occupation use of it complies with the performance standards established in Regulations § 3.12, Applicants represented that the loudest piece of equipment to be used on site will be a compressor. In June of 2007, Applicants used a digital sound level meter to test the decibel level of the compressor from various points on the property. At the end of their 170 foot driveway, Applicants represented that they recorded a 52 decibel sound level emanating from the existing garage with

---

[6] It is unclear from Applicants' current representations whether they intend to dismantle the temporary garage, upon a final determination that they may construct the Proposed Workshop.

the door open. Applicants also recorded a 68 decibel sound level from an idling truck at a distance of 25 feet.

20. Applicants also contend that their home occupation will not create any excessive or nuisance-level smoke, dust, noxious gases, air pollution, heat, cold, moisture, mist, fog, condensation, electromagnetic or electronic disturbances, or vibrations at the property line. Further, Applicants assert that trash and waste oil generated from the repair business will be disposed of properly.

21. Appellants generally contests some of Applicants' evidence of compliance with the Town performance standards under Regulations § 3.12, but have not offered specific evidence to rebut Applicants' representations concerning noise levels and the absence of the other nuisances listed in the performance standards from Regulations § 3.12.

22. The intended location of the Proposed Workshop complies with all setback and height limitations as set forth in Regulations Table 2.5(E), § 3.5 and § 3.6. Applicants assert that the siting of the Proposed Workshop will diminish the effect of its appearance as viewed from off of their property and have offered a photograph (Exhibit C), depicting the view of their property and the Proposed Workshop site from the edge of Appellants' driveway.

23. This Court conducted a site visit on February 11, 2008. As is often the case, the site visit helped the Court put into context the evidence each party presented in support of their respective positions for and against summary judgment.[7]

## Discussion

In this de novo appeal, Appellants have moved for summary judgment on Question one from their Statement of Questions, which essentially asks whether the Proposed Workshop qualifies as an accessory structure. Applicants filed a cross-motion for summary judgment on Question one, asserting that the Proposed Workshop qualifies as an accessory structure as a matter of law, and also moved for summary judgment on Questions two and three from Appellants' Statement of Questions. Question two asks whether the use or activity in the Proposed Workshop qualifies as a "Home Occupation I" under the Regulations, and Question three asks whether the use or activity in the Proposed Workshop meets the "Performance Standards" under the Regulations. We will take each issue in turn.

---

[7] At the site visit, the undersigned repeated to the parties that no observations or comments made during a site visit could constitute evidence. Rather, site visits help the presiding trial judge, who is often unfamiliar with the specific neighborhood, to put into context the evidence the parties present.

Summary judgment is appropriate only "when there are no genuine issues of material fact and, viewing the evidence in a light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." In re Carter, 2004 VT 21, ¶ 6 (citation omitted); V.R.C.P. 56(c). We review the pending motions in this light.

## I.      Proposed Workshop as an Accessory Structure

Under the Regulations, an Accessory Structure is defined as "[a] structure on a lot which is clearly and customarily related and subordinate to the principal structure or use on that lot." Regulations § 10.2. The Regulations do not set a particular limit on the size of the Accessory Structure to allow a mathematical comparison with the principle structure—in this case the Sheldrick dwelling. Regulations § 3.6(A)(2) provides some additional guidance by directing that "[a]n accessory structure or use must be clearly subordinate in size, function, and overall appearance to the principal structure or use" and must conform to all requisite setback requirements. Again, there is no clear mathematical formula or comparison with the dwelling set forth in the Regulations to conclusively determine whether the new structure is subordinate to the dwelling. Therefore, the Court must look to the totality of the circumstances to determine whether the Proposed Workshop is within the scope of the regulatory definition for an Accessory Structure, specifically that is customarily related and subordinate to the principal structure or use on Applicants' property.

In this regard, we note that the uncontested evidence, particularly once put into context by the Court's site visit with the parties, is that the parties' immediate neighborhood provides many examples of residential properties with multiple structures, some attached and some detached from the primary residence. Appellants' own home provides an example of this neighborhood characteristic: what once was a modest structure has been added onto several times, including by linking one or more buildings that, if detached, would be regarded as separate accessory structures. See Applicants' Exhibits F, 1–8, inclusive. Most, if not all, neighboring properties include multiple structures, in addition to the principal residence structure. In this regard, the parties' neighborhood is much like many rural Vermont neighborhoods, populated by families, some of whom conduct home occupations on their properties and who have multiple barns, garages and other structures on their properties.

Appellants have not provided specific evidence contradicting this depiction of the parties' neighborhood. While we recognize the importance of viewing all evidence here in a light most favorable to Appellants, when considering whether to grant Applicants a summary judgment that

would dispense with a merits hearing on this issue, we note that Appellants cannot successfully rely "on mere allegations in the pleadings to rebut credible documentary evidence or affidavits" when the trial court is reviewing a summary judgment request. Robertson v. Mylan Laboratories, Inc., 176 Vt. 356, 362-3 (2004) (citing Gore v. Green Mountain Lakes, Inc., 140 Vt. 262, 266, 438 A.2d 373, 375 (1981)). By failing to present evidence upon which this Court could rely that tended to show that the Proposed Workshop was out of character with the surrounding neighborhood, Appellants have led us to the conclusion that summary judgment on this legal issue is appropriate.

We conclude as a matter of law that a workshop or garage is customarily incidental to residences in this neighborhood, as many free-standing garages and barns populate the neighboring properties. This characteristic of multiple structures on residential properties is mirrored throughout the rural neighborhoods of Vermont. See In re Linnebur Development Application, Docket No. 155-7-06 Vtec (Vt. Envtl. Ct., May 2, 2007); see also Appeal of Stohl, Docket No. 98-6-04 Vtec (Vt. Envtl. Ct., April 8, 2005).

The physical dimensions of a proposed accessory structure do not alone control the final determination of whether the principal dwelling has remained the primary and dominant structure on a property. Applicants submitted several photographs to the Court, demonstrating neighboring properties with garages and barns that were as large or significantly larger than the accompanying residence. Appellants have not presented evidence upon which we could conclude that the Proposed Workshop is out of character with the immediate neighborhood. We therefore conclude that the Proposed Workshop is of a character customarily incidental both to this immediate neighborhood in particular and to rural Vermont neighborhoods in general.

Appellants next contend that an Accessory Structure cannot be permitted if the permittee intends to operate a commercial enterprise within the structure. The definition section of the Regulations—§10.2—appears to provide some support for Appellants' assertion here, since the definition for "Accessory Structure" includes the following permissible use examples: "garages, garden and tool sheds . . . and permanent swimming pools which are incidental to the residential use of the premises and not operated for gain." The parties here offer competing arguments on whether the phrase "not operated for gain" refers to all permitted uses of an accessory structure, or just a swimming pool. While we welcome an opportunity to revisit the grammatical practice of diagramming a sentence, we find that practice unnecessary here, since Regulations § 10.2, if read in a manner to prohibit all "for gain" uses of accessory structures, would contradict other

7

sections of the Regulations that speak more directly to the issue in dispute: permissible home occupations.

Regulations § 4.11(A)(1) specifically provides authorization for the operation of home occupations that are conducted within a portion of the dwelling or an accessory structure. Home occupations are not only hobbies; they are operated with at least a general hope that some pecuniary gain will accrue. Thus, we cannot interpret the "not operated for gain" language of Regulations § 10.2 as barring all home occupations conducted within accessory structures in Charlotte. Such a result would require us to put undue weight upon language that only applies in a general manner to the legal issue in dispute, and to ignore the regulatory language that specifically addresses the legal issue in dispute. General rules of statutory construction, which our Supreme Court has previously found to apply to zoning ordinances, direct just the opposite course as we attempt to interpret the regulatory language. In re Casella Waste Management, Inc., 2003 VT 49, ¶ 6, 175 Vt. 335, 337. Were we to adopt the general bar to uses "for gain" that Appellants suggest, the result would be a reading of the Charlotte Regulations that runs afoul of the legislative protection for home occupations contained in 24 V.S.A. § 4412(4). Therefore, we find that using an accessory structure to conduct a home occupation in Charlotte is not precluded by the language of Regulations § 10.2.

However, while we find that an accessory structure such as the Proposed Workshop is customarily related to a dwelling and is able to be operated for gain, whether this Proposed Workshop is subordinate to Appellants' principal residence or use is a mixed question of law and fact. Appellants assert that the Proposed Workshop is not subordinate in size to the dwelling because the Proposed Workshop will have a footprint of approximately 1,750 square feet, which is larger than the 1,232 square foot footprint of the dwelling. Applicants counter that the Proposed Workshop is necessarily subordinate in size to the dwelling because the cumulative floor space of the dwelling comprises approximately 2,832 square feet, which is larger than the 1,750 square feet of floor space for the proposed workshop. Further, Applicants contend that the siting of the Proposed Workshop will effectively diminish the apparent size of the proposed structure. Thus, material facts are in dispute—that is whether the overall size and siting of the Proposed Workshop will in fact be subordinate to the dwelling. Also, there are disputed issues that contain mixed questions of law and fact—specifically whether comparisons of footprints or floor-space of each structure should govern our determination of whether the proposed accessory structure is "clearly subordinate in size, function and overall appearance to the principal structure

8

or use," pursuant to Regulations § 3.6(A)(2). The only proper means by which to resolve this disputed issue of law and fact is to receive all admissible evidence at trial.

## II. Proposed Workshop as a Home Occupation

Applicants moved for summary judgment on Question two, asserting that the home occupation use of the Proposed Workshop complies with the Regulations. Appellants opposed the motion, contending that the home occupation issue necessarily requires a prior determination on whether the Proposed Workshop qualifies as an Accessory Structure.

The use of a minor portion of a residential property for a home occupation enjoys specific protection under Vermont law. See 24 V.S.A. § 4412(4). Pursuant to that legislative directive, the Charlotte Regulations allow home-based businesses that are customary to Vermont residential areas and do not have an undue adverse effect upon the character of their residential neighborhood. Regulations § 4.11(A). The Regulations define three types of home occupation uses; the classification applicable to the pending application being Home Occupation I, which does not require a zoning permit if the use employs "only the resident(s) of [the] dwelling . . . occurs within a minor portion of the dwelling and/or within an accessory structure to the dwelling; and generates no more than 12 business-related vehicle trips per day." Regulations § 4.11(A)(1). Also, all home occupations must comply with applicable wastewater disposal, parking, and sign requirements and must meet the performance standards as set forth in the Regulations.

We decline to adopt Applicants' assertion that their receipt of municipal approval to use their temporary garage for their home occupation is dispositive of the legal issue presented by their current application. Our first concern stems from the notion that Appellants would be foreclosed from contesting a legal determination of which they had no prior actual notice or an opportunity to be heard. At a minimum, the doctrines of issue preclusion and collateral estoppel require that the party to be precluded was or could have been a party to the prior proceeding. Scott v. City of Newport, 177 Vt. 491, 493 (2004). Our second concern stems from the notion that the underlying facts have changed; the existing temporary garage is smaller in size than the Proposed Workshop. As discussed above, disputed material facts concerning the proportion of the Proposed Workshop in relation to the principal use and structures preclude summary judgment. The uncertainty about whether the temporary garage will be removed or will remain reinforces our conclusion that a summary determination of conformance with Regulations

§ 3.6(A)(2) is not appropriate. This legal issue will therefore also be the subject of evidence presentation at trial.

We believe it important to note, however, that the legality of Applicants' Proposed Workshop as an accessory structure appears to be the only impediment to a legal conclusion that Applicants' proposed use qualifies as a home occupation that complies with Regulations § 4.11(A)(1), since it appears undisputed that the planned use of the Proposed Workshop will not generate more than 12 business-related trips per day and that the only employees will be the Applicants. To the extent that no contradictory evidence on daily trips and number of employees is offered at trial, our analysis of whether Applicants are entitled to operate the proposed truck and machinery repair business on their property as a Level 1 Home Occupation will be determined solely by our conclusions on whether their Proposed Workshop conforms with Regulations §§ 3.6(A)(2) and 10.2 (solely relating to the requirement that it be "subordinate to the principal structure or use on that lot."), as well as the performance standards of Regulations § 3.12, which we now turn to address.

## III.    Performance Standards for Home Occupation

Applicants also moved for summary judgment on Question three, asserting that their proposed home occupation in the Proposed Workshop complies with the performance standards in the Regulations as a matter of law. Appellants opposed the motion.

Under Regulations § 3.12, any proposed use in any zoning district must conform with certain performance standards. Section 3.12 provides that no use shall cause: (a) noise in excess of 70 decibels or noise that is incompatible with surrounding areas; (b) clearly apparent vibration which is discernable at the property line; (c) smoke, dust, noxious gases or other forms of air pollution which constitute a nuisance; (d) releases of heat, cold, moisture, mist, fog or condensation which are detrimental to neighboring uses; (e) electromagnetic disturbances or electronic transmissions or signals; (f) glare, lumen, light or reflection which constitutes a nuisance; (g) liquid or solid waste or refuse which cannot be readily disposed of by available methods; or (h) undue fire, safety, explosive, radioactive emission or other hazard. Id.

Through self-administered tests and site planning, Applicants submitted an affidavit to the Court asserting compliance with all the performance standards in relation to the existing and proposed operation of the truck repair business. Appellants summarily oppose the evidence because it was acquired and submitted by the party seeking the permit and not by an expert retained by Applicants.

We have found no obligation in the Regulations or the enabling statute that bars an applicant from providing her own testimony in support of an application. We have also found no rule or statute prohibiting an applicant from introducing their own testimony of evidence that their proposed use or structure complies with a zoning ordinance. We anticipate that such a rule would frustrate most municipal land use permit proceedings. Such evidence will be evaluated by the Court for relevance, reliability and credibility. Appellants are correct that retained experts may be a better vehicle for presenting such evidence, but they are not the only way.

In light of our prior rulings, we conclude that an evidentiary hearing is necessary to resolve the legal issue of the proposed use's conformance with Regulations § 3.12(a)–(h). In reviewing the parties' presentations concerning performance standards, we conclude that a summary ruling on performance standards for the use of the Proposed Workshop would be improper. However, we note that we see no bar in the Regulations or the enabling statute that would prohibit an applicant from relying upon their own testimony that their proposed structure and proposed use comply with the Regulations. After hearing all the evidence, we will determine whether Applicants' evidence provides a sufficient basis upon which we can conclude that the applicable provisions have been met.[8]

## IV.   Expansion of Non-Conforming Use

Finally, Appellants contend that the Proposed Workshop is an expansion of a non-conforming use because Applicants' property is a four-acre parcel—in a district in which there is a dimensional minimum of five-acres[9]—and therefore requires conditional use approval from the Town. We disagree. The fact that Applicants' lot is undersized and therefore non-conforming does not make all uses conducted on that lot non-conforming. In re Appeal of Wesco, Inc., 2006 VT 52, ¶11–12 (citing Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 50-51 (1986)). Conversely, the fact that Applicants' lot is undersized does not exempt Applicants, their proposed structure, or their proposed use from the requirement that they conform with all other applicable Regulations. Lubinsky, 148 Vt. at 50-51. The lot size is the only non-conformity of which we have been made aware. Since Applicants do not propose to further reduce the size of their lot, we are unaware of any issue of non-conformity that arises by virtue of the size of their lot.

---

[8]  We note that Applicants' offer of evidence here is that their use will not contradict any of the performance standards of Regulations § 3.12. We further note that the Regulations afford the ZBA in the first instance and this Court on appeal with the discretion to fashion conditions to any application approval.

[9]  See Regulations Table 2.5, which identifies the dimensional standards for lands within the Rural Zoning District.

The Charlotte Regulations provide that non-conforming small lots "may be developed for the purposes permitted in the district in which it is located if all other applicable requirements of these regulations are met." Regulations § 3.7. The fact that the lot may be undersized does not prevent any further development; it just requires Applicants to comply with all setback and other applicable requirements. The non-conformity of the size of the lot neither restricts the permitted uses or structures, nor provides exemptions from the applicable dimensional regulations. To the extent that Appellants have raised this argument to convince us that the current home occupation/accessory structure application should not be allowed to be heard, we conclude that Appellants' claim lacks merit.

### Conclusion

For all the reasons more fully discussed above, we **DENY** Appellant's Motion and **GRANT** in part Appellee-Applicants' Cross-Motion on Question One by concluding that while there are material facts in dispute as to the siting and performance standards concerning the Proposed Workshop, it otherwise conforms to the requirements for a permitted accessory structure in this neighborhood. Further, while we **DENY** Appellee-Applicants' Motion on Questions Two and Three because a summary judgment entry would be premature in light of our first ruling concerning the characteristics of the Proposed Workshop, we conclude that there is no legal barrier to our consideration of whether the home occupation use of the Proposed Workshop conforms with the Regulations.

This matter is currently scheduled for a two-day trial, beginning July 9, 2008. A pre-trial conference has been scheduled for Monday, June 2, 2008 with the Case Manager, at which the parties are asked to be prepared to discuss any final preparations for the scheduled trial.

Done at Berlin, Vermont this 30th day of May, 2008.

_____
Thomas S. Durkin, Environmental Judge

12